## MISSOURI, K. & T. R. CO. OF TEXAS v. YOUNG.

### No. 12672.

Court of Civil Appeals of Texas.   Dallas.
March 18, 1939.

Rehearing Denied April 15, 1939.

C. C. Huff, of Dallas, and Head, Dillard, Maxey-Freeman & McReynolds, of Sherman, for appellant.

W. J. Durham, of Sherman, for appellee.

BOND, Chief Justice.

Jewel E. Young filed this suit in a District Court of Grayson County, to recover damages for the death of her son, Billie Walton, Jr., who was struck and killed by appellant's freight train at a public crossing in the City of Denison, Texas, alleging that said fatal accident was caused by the negligence of defendant, in the following respects: (1) Operating the train at a speed greater than 12 miles per hour, in violation of the ordinances of the City; (2) failure to ring the bell on the engine at least eighty rods from the crossing where the accident occurred, and to keep it ringing until the train had passed over the crossing; (3) failure to keep and maintain the crossing in a reasonably safe condition for use by pedestrians; and, (4) failure to have a flagman at the crossing.

The defendant (appellant) anwered by general denial and special plea of contributory negligence of the deceased, in that, (1) he failed to look or listen for the approach of the train; (2) he stopped, at the crossing, where he was not clear of the passing train; and, (3) he failed to step back far enough out of the way of the train to avoid being struck by it.

The case was submitted to a jury on special issues, embodying the alleged negligence of the defendant and the contributory negligence of deceased, with such proper concomitant issues presenting proximate cause; accordingly, the jury found all issues in favor of the plaintiff and assessed her damages at $3,000. Upon the verdict of the jury, the court entered judgment in favor of appellee for said sum, from which the Railroad Company has appealed.

Appellant's first contention is to the effect that, the court erred in overruling its motion for peremptory instruction directing the jury to return a verdict in its favor; because, as a matter of law, no actionable negligence was shown by the record, in that, the negligence alleged, was not the proximate cause of the injury to the deceased, and no causal connection existed between the negligence and the injury; and, further, the evidence shows conclusively that the deceased was guilty of contributory negligence, which proximately caused his injury and death.

■■ We overrule appellant's contention. The facts essential to an understanding of our holdings are these: Bearing in mind that, the jury found that appellant was guilty of negligence in operating its train, on the occasion in question, in excess of 12 miles per hour, within the corporate limits of Denison, and that such negligence was the proximate cause of the injury and death of Billie Walton, Jr.; it also found that appellant was guilty of negligence in operating its train without ringing its bell at least eighty rods from the crossing in question, and keeping it ringing continuously until the train passed over the crossing, and that was also the proximate cause of the injury. There was a valid ordinance in force in the City of Denison, limiting the speed of trains therein to 12 miles per hour; and the statutes of Texas (Art. 6371, Vernon's Ann. Civ.St.) require that a bell shall be rung at a distance of at least 80 rods from the place where the railroad shall cross any public road or street, and that such bell shall be kept ringing until the train shall have crossed such road. Obviously, the requirements imposed upon railroad companies, to limit speed of trains and to ring the engine bells and keep them ringing until trains shall have crossed any road or street, are measures for the protection of persons using the public thoroughfares, and to afford them such warning as to insure safe passage over such crossings. The evidence shows that the deceased, a boy thirteen years of age, and a companion, Carl Anderson, about the same age, were walking home from school, and as they were about to cross the railroad track intersecting a public street in the City of Denison, the deceased was struck by appellant's passing freight train, sustaining injuries from which he died. Carl Anderson testified that he did not see the train approaching the crossing—did not see it at all until it was right on them, when he hallooed to deceased to "Look out, Junior!"; that there was no bell ringing on the engine, no signal given at the crossing to indicate that the train was coming; that he did not hear any whistle as the train approached the crossing, and that, when he called "Look out, Junior", the deceased turned with the train, just a little, as the train struck him. Mike

Ruvault testified that he was sitting in his automobile, parked on the street about 50 feet from the crossing, when the two little boys passed, walking on the north side of the street, westward toward the railroad intersection; that as they neared the track, he saw the train for the first time, and it was practically across the street; that he saw one of the boys throw up his hand as the engine went by, and fall back in the direction the train was going; that he did not hear the bell on the engine ringing, nor the whistle sounding as the train approached the crossing. Will Ray testified that, on the occasion in question, he was on the street, just above where Ruvault said he was sitting, facing west in the direction of the railroad crossing; that he saw the two small boys on the sidewalk, walking westward toward the railroad crossing, and saw the train just as it was coming into the street; that there were some houses and outhouses near the railroad, which prevented anyone walking on the street from seeing the train until it was near the intersection; that a train approaching the street intersection could not be seen until it came into view near the intersection; that when he saw the train, the bell on the engine was not ringing and the whistle had not been sounded; that he saw one of the boys throw up his hand and heard the other hallooing, as the engine passed over the north side of the street. He said that, in his opinion, the train, as it entered the street, was running at the rate of 15 or 20 miles per hour. The evidence discloses that the railroad crossed the street in question at an angle—the street extending east and west and the railroad, southeast and northwest; that the train, on the occasion in question, approached the crossing from the southeast, to the rear of the two boys as they approached the intersection, and that the operatives of the train did not see the boys and did not know that one of them had been struck by the train until advised of such occurrence, after the train had passed over the street. These facts well support the jury's findings that appellant's negligence, at least in the respects last stated, was a proximate cause of the injury and death of the deceased. There is no evidence in this record that the deceased failed to look and listen, or that he stopped on the crossing before his companion called "Look out, Junior", and he was struck by the train, except as might reasonably be calculated from the circumstances of the occurrence.

We do not think the court would have been warranted in holding, as a matter of law, that the deceased was guilty of contributory negligence in failing to stop, look, and listen. The question of negligence of omission on the part of appellant was one of fact for the jury to determine, under all the circumstances of the case and under proper instructions from the court; so, also, was the question of proximate cause and contributory negligence. Contributory negligence on the part of deceased, that is, a failure in the exercise of such due care and diligence as would be expected of a reasonably prudent and careful person under the same or similar circumstances, was no more a question of law than the question of whether appellant was guilty of negligence in the respects mentioned. The deceased and his companion had the right to rely upon appellant's observing the law as to the speed of its train within the city limits, and as to the ringing of the bell on its engine, as they undertook to cross the railroad, but, as a consequence of its failure, the deceased was unable to cross in safety, not being able to see the approaching train because of houses near the track, and no warning being given of the train's approach. It cannot be said, as a matter of law, that there is no causal connection between such negligence and the death of Billie Walton, Jr.

In Galveston, H. & S. A. Ry. Co. v. Wells et al., 121 Tex. 310, 50 S.W.2d 247, 251, our Supreme Court said: "It is well settled in this state that a failure of a person approaching a railroad crossing to stop, look, and listen for approaching trains, and who is killed or injured, does not constitute contributory negligence as a matter of law, but it is a question of fact to be determined under all the surrounding facts and circumstances. Trochta v. Railway Co. (Tex.Com.App.) 218 S.W. 1038; Kirksey v. Traction Co., 110 Tex. 190, 217 S.W. 139; Houston & T. C. Ry. Co. v. Wilson, 60 Tex. 142; Barron v. Railway Co. (Tex.Com.App.) 249 S.W. 825; Freeman v. Ry. Co. (Tex.Com.App.) 285 S.W. 607, 608; Galveston, H. & S. A. Ry. Co. v. Leifeste (Tex.Civ.App.) 8 S.W.(2d) 764; Id. (Tex.Com.App.) 22 S.W.(2d) 1061; Chicago, R. I. & G. R. Co. v. Laro (Tex.Civ.App.) 273 S.W. 684."

So, considering the foregoing rule in the light of this record, the findings of the jury that such negligence was a proximate cause of the injury and death of the deceased, finds sufficient support in the record, and we are not prepared to hold that the deceased, a minor of tender years, was guilty of contributory negligence, as a matter of law, by his attempt to cross the track ahead of the train which struck him.

Appellant advances the same contention as above to the findings of negligence and proximate cause, for its failure to maintain a watchman at the crossing in question, and to keep the crossing in reasonably safe condition for pedestrians to cross the track in safety, coupled with the further contention that the trial court erred in refusing to define the term "ordinarily hazardous or unusually dangerous" employed in the court's charge, submitting the issue as to the condition of the crossing. We think there is sufficient evidence to carry these negligence issues to the jury. The street in question is a much-traveled thoroughfare, leading to a public school of the City, over which many children pass to and from school, and the public generally uses such street in going to and from the business section of the City. At the intersection, the Railroad Company had placed shattered rock, or ballast, on its right of way, leading from the sidewalk to and across its track, and maintained its crossing at an elevation, making the passway more difficult to travel. We recognize that it is impossible to lay down any fast rule, or rules, which will govern the question of whether a given record contains affirmative evidence of negligence in a railroad company's failure to maintain a flagman at a railroad crossing and to so maintain such crossing as to be safe for people who wish to use it. Such is left more or less to the facts and circumstances of the particular case. It is also difficult to decide whether there is any causal connection between such negligence and the injury involved. So it is, in the case at bar, the court would not have been justified in saying that such presented a question of law and not of fact to be determined by the jury.

In submitting the issue as to negligence of defendant in maintaining its crossing in a safe condition, the court refused to define the term "ordinarily hazardous or unusually dangerous", which, under the authority of Missouri, K. & T.

Ry. Co. v. Long, Tex.Com.App., 299 S.W. 854 and cases there cited, presents error. Be that as it may, the defendant having been convicted of negligence, which proximately caused the death of the deceased, in the other distinct and independent instances; namely, a failure to ring the bell as the train approached the crossing; failure to limit the speed of its train to 12 miles per hour, and, failure to keep a watchman at the crossing to give warning, the proper submission of these issues and the affirmative answers thereto, showing the defendant was guilty of negligence in those respects, and that such negligence was the proximate cause of the death of deceased, would support the judgment rendered in this cause, irrespective of the erroneous submission of, or failure to define the term in the submitted issue on the failure to keep the crossing in question in suitable repair. Galveston, H. & S. A. v. Wells, supra.

We have carefully considered all of appellant's assignments, and, finding no reversible error, the judgment of the court below is affirmed.